Case 18-1868, Russell Zander v. Floyd Carlson, et al. Okay, with the lawyers who are going to argue the case, please introduce yourself to the court. I'm Bruce Shield, C.H.O. for the Paranormal Justice Committee. I'm the president of the Nellie Hill Court. As of November of 2011, I'm appearing on behalf of the defendant's family. Okay, does the appellant want to reserve some time for rebuttal? I'm sorry, sir. Pardon? I didn't hear what you said. Would you like to reserve some time for rebuttal? Five minutes. Okay. You have only 15 minutes, you understand that? I understand, sir. Okay, let's proceed. I will, at the outset, I started my day by having my bingo eat my hair again. Well, let me say this. That's not a microphone. Keep your voice up real loud. We'll speak very loud. Okay. I was more worried about hearing you, ma'am. I mean, please, the court, we're here seeking reversal of the 619.1 motion dismissing our case with prejudice at the outset of the litigation. There is an issue being raised over whether or not we should have or could have put insurance in that complaint. We would have had no reason to do that because we had no reason to think that they would assert an immunity defense. But even if we had, we sought leave of court after, in our response, to file an amended complaint, which was ignored and the case was dismissed without prejudice. That would have also cured up some of the alleged contradictions in the complaint had we been given that. We maintain that what the trial court did was make a great number of factual determinations, depriving us of any discovery whatsoever, any attempt to amend over or plead over. We maintain that the Atkinson rule, as it's called, has no applicability in this case. We don't believe this was a grievance. This was a complaint filed by the chief of police at the village of Fox Lake before the Fire and Police Commission seeking his termination of employment for what we consider to be very minor misconduct. Let me ask you this. If you wanted to file an amended complaint and it was denied, okay, then why didn't you try to file it later so it would be part of the record so we'd be able to look at it? Because the case was immediately dismissed with prejudice. So we believe that we stated the cause of action for legal malpractice as it was written. When I say we'd file an amended complaint, we'd clear up some of the contradictions or use of language between various plaintiff paragraphs, which have been raised in the appellee's brief. We believe that that complaint was sufficient. The only thing that would have changed, and I don't think you really pleaded anyway, was when we discovered he had malpractice insurance. If the Atkinson rule is there to prevent members and officers from being personally liable judgments, then you have to assume that everything is either a grievance or there are individual causes of action. And we maintain that's what we have here. We don't have a grievance based on a collective bargaining agreement. If their position is correct that only the state labor board has jurisdiction, then the chief of police couldn't have filed a complaint to terminate him before the Fire and Police Commission. That's why there are Fire and Police Commissions. They provide due process to public employees and prevent just a termination. Or in a case like this where you have an arbitrator saying, well, I couldn't disagree with the chief of police. I just don't have the knowledge or experience to do that. Now, that's not due process. And the Illinois Labor Board doesn't have exclusive jurisdiction on firing the police officers, or that's all they'd be doing. That's why they create that Fire and Police Commission. Of all of those cases that involve grievances pursuant to the collective bargaining agreement, our position is they have absolutely no application in the law to this type of a case. It isn't a grievance. And that attorney shouldn't be allowed to hide behind immunity, even though he buys malpractice insurance. He shouldn't be allowed to hide in his immunity defense. A citizen, whether he's a police officer being fired or otherwise, has some right to representation. When a lawyer undertakes that representation, you don't have to have a written agreement. You can still allege and prove an attorney-client relationship. Okay. You can do that. I believe we've pled it, and I believe we can prove it. And if we didn't plead it properly, we certainly would be able to prove it. Because here, if, say, a man hires a lawyer and pays him to write an estate plan for both himself and to do it for his wife, and the lawyer has no contact. Where's the attorney-client relationship? When he agreed to represent Zander in front of the Fire and Police Commission and then talk Zander into removing it to an arbitrator, he created that attorney-client relationship. What case is that? Your Honor, I can't cite a case to you right now, but I believe that under any circumstance, it's the actions that establish the attorney-client relationship. And if you're determined to say there was no attorney-client relationship, even though this man gave him all this advice that we set forth, then certainly he's a beneficiary of some attorney-client relationship. What case is it? When we cite it to you, tell him. I've read what you've cited me, and none of it says it. Sir, I don't know of anything better than the cases that we cited that establish a third-party ability to sue an attorney who's done actions on their behalf. A lawyer can't sit back and say, well, if you don't have a written agreement, then there is no, no matter what I've done for you, there is no relationship. I mean, that's just not what the law is. I mean, there are actions. No, the law is that it's against the union that hired the lawyer. I'm sorry, but? The law is basically that the client can sue the union, not the lawyer, because the lawyer represents the union. The cases we cited, and specifically Peterson v. Kennedy, which cited to Weissel v. Oil Chemical, gets into the issue of the actions of the lawyer being more important, and they cite also Montclazer v. Leighton. It's a First Circuit 89 test that says the text is what the role of the attorney played was. Well, the role the attorney played was not handling agreements pursuant to a collective bargaining agreement. The role that attorney played was representing the plaintiff appellate in an administrative proceeding that was going to cause his loss of employment, and that certainly makes him a beneficiary at the very minimum to Mr. Carlson's actions and activities, because here, if it doesn't, then an attorney can do virtually anything. I mean, he's not limited by the rules of professional conduct. He's not limited by the common law regarding acts of malpractice. He can just sit back and say, well, I work for the union, and I've got immunity, and I can do anything, even though this has nothing to do with the collective bargaining agreement, and that's not what these cases say. To me, there's no question that he should be able to proceed with this litigation. You just cannot have this sort of thing happening. It has nothing to do with the collective bargaining agreement, and that's the only thing that gives Mr. Carlson his immunity. Thank you. Your Honor. Thank you, Your Honor. May it please the court, counsel, again, Brendan Nelligan on behalf of Roy Carlson and the Illinois Fraternal Order of Police Labor Council. So, Your Honor, I just want to go kind of slowly through this and just point out that the circuit court here was correct when it dismissed the plaintiff's complaint, counts one and two, against both Mr. Carlson and the labor council. By dismissing the case against Mr. Carlson, it found that it was controlled by the Supreme Court's decision in Atkinson v. Sinclair-Refiner because the plaintiff's complaint sought to hold Mr. Carlson, who at all times is an employee of the union, as is alleged in the complaint. It sought to hold Mr. Carlson liable for the acts, for his acts as an agent of the union. The circuit court also found that the malpractice claim against the labor council essentially amounted to an unfair labor practice claim, a breach of the duty of fair representation for which the exclusive jurisdiction is before the Illinois Labor Relations Board. Now, the circuit court acknowledged that there's no Illinois case law on this. So it looked to Atkinson. It looked to a Third Circuit decision in Carino v. Stephan, and it found that because Illinois, when it's considering labor law issues, looks to the Federal courts to have a uniform body of labor law, that it was bound by those cases. Now, this Court, and really, as far as we know, it's the first time an Illinois court has had the opportunity to consider the Atkinson rule. This Court should adopt that Atkinson rule, as set forth in Atkinson and Peterson v. Kennedy, which apply to Atkinson to attorneys who are agents of the union, to kind of hold this immunity applies to prevent state law malpractice claims to go to state court proceedings when, in fact, they're unfair labor practices. The reasons for the Atkinson rule are sound. First, it provides for a uniformity which is consistent with a national labor policy that unions are to be the sole source of recovery for any alleged wrongs that they or their agents may inflict. The second policy reason is it avoids subjecting union agents like Mr. Carlson to an inconsistent standard of liability where they can be liable for mere negligence, where their principle, and as Your Honor pointed out, the principle is the union. The principle is subject to liability only if their conduct is arbitrary, discriminatory, or in bad faith. The third reason for a consistent approach to this labor policy is to avoid disparate statute of limitations. So the statute of limitations in an unfair labor proceeding, you know, they want prompt resolution so the statute of limitations in those claims is six months. However, for a state law malpractice claim, that statute of limitations maybe is two years in the state of Illinois or maybe three years or longer in other states. And Peterson particularly found that that was an intolerable situation because it would prevent attorneys I'm sorry, unions from getting good legal advice because the attorneys would be liable far more for a far longer period than the agents. Now, what Mr. Gooch is arguing is that Atkinson and Peterson don't apply because somehow his case had nothing to do with the collective bargaining agreement, which is at issue in this case. As we pointed out to the circuit court and as we pointed out in our briefs, that's belied by the record. If you look at the allegations of the plaintiff's complaint, those allegations squarely reference and implicate the collective bargaining issues. For example, on paragraph 6 of the complaint, at page 10 of the record, the plaintiff alleges Carlson has been held out to the members of the FOP as the FOP's attorney who would represent all members in labor disputes or grievances. Again, at paragraph 10, the plaintiff alleges Zander was informed by more than one employee of the FOP that Defendant Carlson handled all grievances and termination proceedings. The next paragraph, paragraph 12, neither Carlson nor FOP restricted the scope of his or her or its representation of Zander, agreeing to handle the entire grievance and termination proceedings on behalf of Zander with the village of Fox Lake. And in addition, the only way this gets to an arbitration provision or an arbitration proceeding is through the collective bargaining agreement. But for the collective bargaining agreement, there's no right to arbitration in this situation. So the allegations of the complaint directly contradict what Mr. Gooch has argued here, that this somehow had nothing to do with collective bargaining. And what Peterson found was that in the event that there's an attorney-client relationship or work that is wholly unrelated to collective bargaining, like a divorce proceeding or the creation of a will, then the Atkinson rule wouldn't apply. But for those situations, the Atkinson rule applies and immunity applies. Clearly, the facts of this case are not wholly unrelated to the collective bargaining agreement. The other exception to the Atkinson rule that Mr. Gooch is trying to shoehorn this case into is the fact that there's a separate and independent attorney-client relationship    between Mr. Carlson and Mr. Zander in this case. And as Your Honor pointed out, there's no such facts that are alleged here. If you look at paragraphs 10 to 12 of the complaint, what Mr. Gooch alleges on behalf of Mr. Zander is that Mr. Carlson was forced on Mr. Zander, that he didn't have any selection, but he went with him anyways. And what Peterson found, that that situation is not an independent attorney-client relationship. And I'm going to quote from Peterson. The legal theory we described tracks the practical realities of labor-management relations in the United States today. The union member looks to his union to save his job, gives it credit when a dispute is resolved in his favor, and holds it responsible when his discharge is upheld or he loses other important rights. He views the union attorney as an arm of his union rather than as an individual he has chosen for his lawyer. That's the situation that Peterson set forth the rule. That's the situation that we have here. And for that reason, without regard to whether a plaintiff could have pled anything differently, the facts that he did plead put this case squarely within Atkinson, Peterson, and really every other court that has considered this issue. Your Honor asked if there was any court that considered from the third-party beneficiary theory that is being espoused. In fact, in the Carruno v. Steffens case, the Third Circuit expressly rejected that theory. They said, no, there's no attorney-client relationship, nor is there a third-party beneficiary. Atkinson applies because of the policy reasons that support having a national, uniform labor policy when it comes to labor management relations. So for those reasons and the reasons that are stated in our brief, I would ask this Court to affirm the circuit court in all respects, affirm the judgment in this case, and really make clear that Illinois, again, like every other jurisdiction that's considered this issue, also follows the Atkinson rule. Thank you, Your Honor. I heard my name mentioned several times in that argument. I'm here to tell you I'm not that bad of a person. Peterson v. Kennedy favors us. I mean, Peterson v. Kennedy says if the legal services are unrelated to the collective bargaining agreement, then you can go after them. So they counter that by saying, well, when you went to arbitration, that's pursuant to the collective bargaining agreement. But the main thrust of our complaint was that advice that Carlson gave Zander to give up his civil service rights and his right to have a hearing before a full commission in return for going in front of one arbitrator, pursuant to the collective bargaining agreement. So if you took everything else out of our complaint, that one issue we maintain is negligence. And the attorney-client privilege is factual. We should have had the right to prove that one existed. And I believe we could do that. And if we couldn't prove that factually, I believe we could prove that he's a beneficiary that entitles him to those legal services, all of which goes beyond Atkinson and is what brought us here primarily. Thank you. Well, thank you for giving us an interesting case. You'll have an order and an opinion shortly, according to the judge.